UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMANTHA T.,<br>  Plaintiff,<br>v.<br>FRANK J. BISIGNANO, et al.,<br>  Defendants. | Case No. 25-cv-02919-PCP<br><br>**ORDER AFFIRMING COMMISSIONER'S DECISION**<br><br>Re: Dkt. No. 12 |

Pursuant to 42 U.S.C. § 405(g), plaintiff Samantha T. seeks judicial review of the Commissioner of Social Security's decision denying her application for child's disability insurance benefits and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.[1] Plaintiff asks the Court to reverse the Commissioner's decision and remand for an immediate payment of benefits or, in the alternative, for further administrative proceedings. For the following reasons, the Court affirms the decision.

## BACKGROUND

Plaintiff filed an application for child's insurance benefits based on disability on September 27, 2021. She filed an application for supplemental security income on February 28, 2022. The Commissioner denied plaintiff's application initially and on reconsideration. Plaintiff then requested, and was granted, a hearing before an administrative law judge. The ALJ took testimony from plaintiff and a vocational expert. The ALJ subsequently rendered a decision denying the applications on June 17, 2024, which became the final order of the Commissioner after plaintiff's request for review by the Appeals Council was denied. The ALJ's decision is

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

therefore the final decision subject to this court's review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

In the opinion, the ALJ first noted that Plaintiff alleged an onset date of April 30, 2017. The alleged onset date was before plaintiff's twenty-second birthday as required to qualify for child's insurance benefits based on disability. *See* 20 CFR § 404.350(a)(5).

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920.[2]

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date.

At step two, the ALJ found that plaintiff "has the following severe impairments: eating disorder; obsessive-compulsive disorder; anxiety disorder; depressive disorder; and autism spectrum disorder."

At step three, the ALJ found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Par 404, Subpart P, Appendix 1." The ALJ considered Listing 5.08 (weight loss due to any digestive disorder), and concluded that plaintiff's physical impairments did not meet the listing

---

[2] The five steps of the inquiry are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. See 20 C.F.R. §§ 404.1520(b), 416.920(b).
2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. See 20 C.F.R. §§ 404.1520(c), 416.920(c).
3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. See 20 C.F.R. §§ 404.1520(d), 416.920(d).
4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. See 20 C.F.R. §§ 404.1520(e), 416.920(e).
5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. See 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

2

because her Body Mass Index had not remained below 17.5 for at least 60 days within a consecutive six-month period.

The ALJ also found that plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 [depressive, bipolar, and related disorders], 12.06 [anxiety and obsessive-compulsive disorders], and 12.10 [autism spectrum disorders]." To reach that determination, the ALJ considered whether the "paragraph B" criteria of each listed impairment were met. To satisfy the "paragraph B" criteria, a claimant's mental impairments must result in one extreme limitation or two marked limitations in one of four areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. The ALJ determined that plaintiff's mental impairments did not meet the paragraph B criteria because she had only a mild limitation in understanding, remembering, or applying information and moderate limitations in all other categories. The ALJ also found that the "paragraph C" criteria of listing sections 12.04 and 12.06 were not satisfied.

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity or] RFC." *Bray v. Comm'r of Social Security Admin.*, 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with certain modifications. To reach this determination, the ALJ assessed the evidence in the administrative record to consider whether an underlying medically determinable impairment could reasonably be expected to produce plaintiff's symptoms and then evaluated the extent to which the intensity, persistence, and limiting effects of plaintiff's symptoms limit her work-related activities.

At steps four, the ALJ determined that plaintiff "has no past relevant work" experience to which she could return.

At step five, the ALJ considered plaintiff's age, education, work experience, and residual

1    functional capacity and found plaintiff capable of performing jobs that exist in significant numbers
2    in the national economy, such as office helper, mail clerk, and wrapper counter. The ALJ thus
3    concluded that plaintiff was not disabled from April 30, 2017 through the date of her order, June
4    17, 2024.

## LEGAL STANDARDS

On review, the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court can set aside a denial of benefits only if it is not supported by substantial evidence or based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997).

## ANALYSIS

### I. The ALJ did not improperly discount plaintiff's testimony regarding the severity of her psychological symptoms.

Plaintiff argues that the ALJ improperly discounted her testimony about her alleged psychological symptoms. Generally, district courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citation modified). If an ALJ determines that a claimant "has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged ... and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation modified). An ALJ's "finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). But as long as the ALJ "show[s] [her] work, ... [t]he standard isn't whether [the] court is convinced, but

4

instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). If the ALJ's interpretation of the evidence is a "reasonable [one] and is supported by substantial evidence," it is not the "role [of this Court] to second-guess it." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." (citation modified)).

      Plaintiff argues that the ALJ erred in concluding that her "mental status examination findings do not support [plaintiff]'s allegations of disabling symptoms and limitations due to her psychological impairments." Plaintiff points to mental status examinations and treatment notes documenting that, at various times from 2017 to 2022, she presented with a disheveled or unkempt appearance, depressed or anxious mood, flat or blunted affect, limited eye contact, and fidgety behavior, among other symptoms. The ALJ acknowledged this evidence, noting that plaintiff "has at times exhibited abnormal mood (typically with congruent affect) and limited or avoidant eye contact, and has intermittently endorsed compulsive behaviors such as skin picking and pacing." But because other examinations indicated that plaintiff "has otherwise generally presented normally," the ALJ found that "[t]he evidence documents a waxing and waning of any significant mental symptoms." The ALJ explained, for example, that Dr. Hammer's psychiatric evaluations documenting plaintiff's depressed or anxious mood also described her as presenting with a well-groomed appearance, cooperative attitude, normal speech and affect, and linear thought processes. The ALJ pointed to similar examinations from each year during the period of plaintiff's alleged disability. Several of these examinations suggested that plaintiff had only "moderate" or "mild" psychological symptoms. In others, physicians, plaintiff, or her parents noted that plaintiff's psychological symptoms had improved. The ALJ also explained that, in one report, Dr. Hammerman opined that plaintiff's presentation was "not commensurate with her report of depression." Taken together, this evidence provides a sufficiently specific, clear, and convincing basis for the ALJ's discounting of plaintiff's testimony about her psychological symptoms. While plaintiff disputes the ALJ's interpretation of this evidence, and argues that other psychiatric

5

1  evaluations should receive greater weight, this Court may not reverse an ALJ's determination

2  merely because another possible interpretation of the record is possible. *Rollins*, 261 F.3d at

3  857; *Ghanim*, 763 F.3d at 1163.³

4       Plaintiff also disputes the ALJ's finding that her psychological-symptom testimony was

5  inconsistent with her activities. The ALJ noted that plaintiff regularly performed at open mics,

6  "helped her mother out with an online business making spreadsheets," often completed household

7  chores like cleaning and preparing simple meals, and engaged in online research "as a hobby on a

8  daily basis." The ALJ also looked to plaintiff's passion for art and her statement that "I've pulled

9  all-nighters on accident, just trying to perfect a piece of art." And the ALJ cited plaintiff's

10 statements that she had only "minor" difficulties with independent living; regularly engaged in

11 hobbies like playing piano, writing songs, and playing video games; and had a boyfriend and at

12 least two other friends with whom she intermittently connected. These activities, the ALJ

13 concluded, suggest "adequate and even significant adaptive functionality" and an ability to interact

14 socially that are not "consistent with [plaintiff's] allegations of complete disability due to mental

15 impairments."

16     While "the mere fact that a plaintiff has carried on certain daily activities" does

17 not *necessarily* detract from her credibility, *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017),

18 "inconsistent daily activities may provide a justification for rejecting symptom testimony," *id.*,

19 when they contradict plaintiff's other testimony or if they "involve[] the performance of … 

20 functions that are transferable to a work setting," *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

21 The daily activities that the ALJ cited are at least in some tension with plaintiff's testimony about

22 her limitations, such as her assertion that she cannot hold a job because of an inability to maintain

23 focus. As the ALJ explained, the activities described above "require[] varying but significant

---

³ Plaintiff also suggests that the ALJ improperly considered certain treatment records from *physical* clinicians in determining whether to credit plaintiff's testimony concerning her *psychological* symptoms. But the cited evaluations from physical clinicians relevantly documented plaintiff's normal appearance, alertness, apparent lack of distress, cooperative attitude, and normal comprehension and mood. And although plaintiff contends that the ALJ relied on two citations that "had no mental findings whatsoever," those sources also relevantly noted plaintiff's normal appearance, alertness, and lack of distress.

1    degrees of sustained attention and concentration." Though plaintiff points to contradictory

2    evidence suggesting that she has at times struggled to focus and to interact normally, the Court

3    cannot disturb the ALJ's reasonable interpretation of the record even if another interpretation is

4    possible.

5        For the reasons discussed above, the ALJ's reasoning is clear, specific, and supported by

6    substantial evidence.

**II.     Substantial evidence supports the ALJ's evaluation of the medical-opinion evidence.**

    Plaintiff argues that the ALJ erred in her assessment of the medical-opinion evidence. "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [he]r impairment(s) and whether [she] ha[s] one or more impairment-related limitations or restrictions in … [her] ability to perform physical demands of work activities, … to perform mental demands of work activities, … to perform other demands of work, … [or] to adapt to environmental conditions." 20 C.F.R. § 404.1513(a)(2). An ALJ "must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Where there are ambiguities or conflicts in the medical evidence, the ALJ is responsible for resolving them. *Id.*; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ "must articulate how persuasive [she] finds all of the medical opinions from each doctor or other source, and explain how [she] considered the supportability and consistency factors in reaching these findings." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citation modified); *see* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The supportability factor is "the extent to which a medical source supports the medical opinion by explaining the 'relevant objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)) (citation modified). The consistency factor is "the extent to which a medical opinion is 'consistent with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)) (citation modified). An ALJ may, but need not, consider other factors, such as "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists." *Id.*

    Plaintiff argues that the ALJ erred by (1) finding Dr. Pedgrift's opinion to be "minimally

7

persuasive" and (2) failing to evaluate the opinions of Dr. Marcaletti and plaintiff's therapist Ms. Potter.

Regarding Dr. Pedgrift, the ALJ complied with the relevant regulations by articulating how persuasive she found Dr. Pedgrift's opinion and how she considered the supportability and consistency factors in reaching that finding. The ALJ noted, for example, that Dr. Pedgrift opined on plaintiff's limitations in only a "generalized fashion" and that Dr. Pedgrift's evaluation of the severity of plaintiff's autism spectrum disorder was "in check-the-box format," making it less persuasive. The ALJ also explained that Dr. Pedgrift's opinion repeatedly relied on plaintiff's poor eye contact, which was inconsistent with other medical evidence in the record reporting "good," fair, or at least "some" eye contact. And the ALJ reasoned that certain of Dr. Pedgrift's observations undermined her ultimate assessment that plaintiff "presents with restricted, repetitive patterns of behavior, interests, and activities that affect her day-to-day functioning." For example, Dr. Pedgrift reported that plaintiff "put forth strong effort on assessment tasks," "was cooperative and responsive" during the evaluation, "responded to all questions and tasks presented to her," and had an IQ score at the 99th percentile, suggesting stronger functioning than Dr. Pedgrift assessed. The ALJ also explained that Dr. Pedgrift's opinion was inconsistent with the opinions of other medical experts whose opinions the ALJ found persuasive.

Plaintiff first faults the ALJ for not addressing all aspects of Dr. Pedgrift's opinion concerning plaintiff's mental functional limitations. But the ALJ is not required to comment extensively on every medical opinion. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (citing *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)); *see also Book v. Massanari*, No. C 00-04202, 2001 WL 902572, at *5 (N.D. Cal. Aug. 2, 2001).

Plaintiff next argues that the ALJ's conclusions are not supported by substantial evidence because she disagrees with the ALJ's assessment of the supportability and consistency of Dr. Pedgrift's opinion. She offers various arguments for why the ALJ should have assessed Dr. Pedgrift's opinion differently. For example, she argues that the ALJ overemphasized eye contact as an indicator of ability to interact socially and improperly discounted Dr. Pedgrift's opinion on that basis. But the possibility of reasonably reaching a different conclusion about persuasiveness

8

does not make an ALJ's determination unsupported by substantial evidence and is not sufficient grounds for reversal. Substantial evidence is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," not such relevant evidence as a reasonable mind would find permits no other conclusion. *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). As long as the "ALJ's rationale is clear enough that it has the power to convince," *Smartt*, 53 F.4th at 499, it is not the "role [of this Court] to second-guess it," *Rollins*, 261 F.3d at 857.

Regarding Dr. Marcaletti and Ms. Potter, the ALJ was not required to evaluate their opinions because they did not qualify as "medical opinions" under the relevant regulation. As noted above, a "medical opinion" must state both "what [a claimant] can still do despite [he]r impairment(s)" *and* "whether [she] ha[s] one or more impairment-related limitations or restrictions in" certain abilities. 20 C.F.R. § 404.1513(a)(2). While both Dr. Marcaletti and Ms. Potter opined on plaintiff's limitations, neither offered any opinion as to "what [she] can still do despite [he]r impairment(s)." District courts in this circuit frequently hold that similar records are not "medical opinions" that an ALJ is required to evaluate. *See, e.g.*, *Rodin v. Comm'r of Soc. Sec.*, No. 1:21-cv-00900, 2023 WL 3293423, *18-19 (E.D. Cal. 2023); *Brayden B. v. Comm'r, SSA*, No. 3:20-cv-1963, 2023 WL 5606981, *4 (D. Or. 2023); *Dorsey v. Comm'r of SSA*, No. CV-22-01297, 2023 WL 6058505, *5 (D. Ariz. 2023); *Kava v. Kijakazi*, No. CV 20-00385, 2021 WL 4267505, at *11 (D. Haw. Sept. 20, 2021). So too here.

### III.     Substantial evidence supports the ALJ's step-three finding.

Plaintiff argues that the ALJ erred in finding at step three that her mental impairments did not meet or medically equal any impairment listed 20 C.F.R. Part 220, Appendix 1, such as listings 12.04, 12.06, and 12.10. To determine whether a claimant's mental impairment meets a listing, the ALJ must consider whether the impairment results in at least one "extreme" limitation or two "marked limitations" in the four "paragraph B" areas. 20 C.F.R. §§ 404.1520a(b)(2), (c)(3).

Here, the ALJ considered each of the "paragraph B" criteria, as required, and substantial evidence supports her finding that plaintiff has only mild or moderate limitations in each area. Regarding the first area—understanding, remembering, or applying information—the ALJ found

that plaintiff is only mildly limited. The ALJ reached that determination based on plaintiff's statements that she engages in research on a daily basis, plaintiff's completion of her function report "rather comprehensively in her own handwriting," and plaintiff's high scores on intelligence evaluations. The ALJ also cited medical examinations stating that plaintiff's autism spectrum disorder lacked "accompanying intellectual impairment"; that plaintiff had intact calculation and abstraction abilities, memory, and cognition; and that plaintiff communicated in a complete, complex, and easily understandable manner. Regarding the second area—interacting with others—the ALJ found that plaintiff is moderately limited based on her statements that while she lacks deep friendships and has some difficulty connecting with others, she "do[es] not act hostile to anyone," has a "fine" ability to interact with authority figures, and interacts on occasion with friends and her boyfriend. The ALJ also cited medical evidence of plaintiff's "good" eye contact. Regarding the third area—concentrating, persisting, or maintaining pace—the ALJ found that plaintiff has moderation limitations, citing her statements that she is at least sometimes able to finish what she started and that her ability to maintain attention "depends on the task." The ALJ also pointed to the activities discussed above, including plaintiff's statement that she sometimes "pulled all-nighters … trying to perfect a piece of art," and medical evaluations noting plaintiff's normal attention and concentration. Regarding the fourth area—adapting or managing oneself—the ALJ again found that plaintiff is moderately limited based in part on evidence that plaintiff variously presented with adequate grooming and her statements that she can live independently, prepare simple meals, and complete household chores with only "minor" difficulty.

Plaintiff disputes the ALJ's interpretation of the record, pointing to evidence in the record that suggests more significant functional limitations in the "paragraph B" areas. But the ALJ identified evidence that is at least reasonably adequate to support her conclusion and therefore satisfies the "substantial evidence" standard. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("Substantial evidence is more than a mere scintilla but less than a preponderance" (quoting *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))). Plaintiff's argument amounts to an alternative interpretation of the record, which is an insufficient ground for reversal. *See Andrews*, 55 F.3d at 1039–40.

# CONCLUSION

For the foregoing reasons, the Court affirms the Commissioner's decision.

**IT IS SO ORDERED.**

Dated: November 4, 2025

_____
P. Casey Pitts
United States District Judge